**In re CARDINAL INDUSTRIES, INC., and the following substantively consolidated subsidiaries: Cardinal Industries of Florida, Inc., Cardinal Industries of Georgia, Inc., Cardinal Industries Services Corporation, Cardinal Industries Mortgage Company, Cardinal Parts Service Company, Cardinal Lodging Group, Inc., Cardinal Apartment Management Group, Inc., Cardinal Industries Development Corporation, Cardinal Industries of Florida Services Corporation, Cardinal Industries of Georgia Services Corporation, Cardinal Furniture Leasing Company, Cardinal Retirement Management Group, Inc., Cardinal Acceptance Corporation, Maxim Building Corporation, Inc., Cardinal Advisory Group, Inc., Columbus Construction, Inc., Cardinal Securities Corporation, Cardinal Manufacturing, Inc., Camden Development Corporation, Cardinal Compensation, Inc., Cardinal Regulatory of Kentucky, Inc., Cardinal Regulatory of Michigan, Inc., Cardinal Regulatory of West Virginia, Inc., Cardinal Land Corporation, Cardinal Community Corporation, Cardinal Industries Insurance Agencies, Inc., CII of Pennsylvania, Inc., Cardinal Industries of Texas, Inc., Cardinal Industries Development Corporation of Texas, Inc., Cardinal Realty Company, Cardinal Industries Realty Corporation, Debtors.**

Bankruptcy No. 2–89–02779.

United States Bankruptcy Court, S.D. Ohio, E.D.

Feb. 3, 1992.

Henry P. Montgomery, Sherri Blank Lazear, Baker & Hostetler, Columbus, Ohio, for Cornell University.

Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, co-counsel to the Trustee.

Jay Alix, Jay Alix & Associates, Southfield, Mich., Chapter 11 Trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio, Columbus Office of the U.S. Trustee for Region IX.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for the Official Committee of Unsecured Creditors.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, Charles J. Taunt, Charles J. Taunt & Associates, Birmingham, Mich., Gary H. Cunningham, Kramer Mellen, P.C., Southfield, Mich., Sp. Counsel to the Trustee of the Consol. Estate.

Elliott D. Hefler, Gen. Counsel, Cardinal Industries, Inc., Columbus, Ohio.

OPINION AND ORDER ON MOTION OF CORNELL UNIVERSITY FOR THE ALLOWANCE OF AN ADMINISTRATIVE CLAIM

BARBARA J. SELLERS, Bankruptcy Judge.

### I. *Procedural Background*

Before the Court is a motion filed by Cornell University ("Cornell") seeking the allowance and payment of an administrative expense from the substantively consolidated estates of Cardinal Industries, Inc. ("Cardinal") and its corporate subsidiaries. Jay Alix, the Chapter 11 operating trustee ("Trustee"), opposed Cornell's motion. The parties agreed to submit to the Court the legal issue of whether Cornell is entitled to an administrative priority expense. For the reasons which follow the Court finds that any allowed claim of Cornell arising from the facts asserted in this motion will not be entitled to the status of an administrative priority expense under 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1).

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which this bankruptcy judge may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B).

### II. *Facts*

Cardinal entered into a contract with Cornell in December 1988. That contract called for Cardinal to manufacture and construct graduate student housing for Cornell. Cardinal's performance under the contract was not complete at the time it filed its Chapter 11 petition on May 15, 1989. Cardinal has not assumed this contract.

Cardinal continued work under the contract after its bankruptcy filing date and, according to Cornell, Cardinal breached that contract postpetition. As a result of that breach Cornell alleges it incurred damages for repairing and replacing the housing units and for the delay in completion. Cornell contends that these damage expenses are an administrative expense of the estate.

Cardinal does not admit Cornell's allegations of postpetition breaches. For purposes of this motion, however, Cardinal assumes these facts to be true so that the Court may determine the legal issue.

### III. *Issue Presented for Determination*

The only issue submitted to the Court is whether the damages asserted by Cornell against the bankruptcy estate are entitled to priority as administrative expenses under 11 U.S.C. §§ 503(b)(1)(A) and 507(a).

## IV. *The Applicable Law*

A request for an administrative expense shall be granted, *inter alia*, for "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). If granted, administrative expenses are entitled to a priority status for payment ahead of other unsecured priority claims and general unsecured claims. 11 U.S.C. § 507(a)(1). The Court has broad discretion to determine whether a request for payment is properly an administrative expense. *In re Moore,* 109 B.R. 777, 780 (Bankr.E.D.Tenn.1989). Further, § 503(b)(1)(A) "should be narrowly construed to keep administrative costs to a minimum and thereby further the Debtor's rehabilitation." *Grantham v. Eastern Marine, Inc.,* 93 B.R. 752, 745 (Bankr.N.D.Fla. 1988).

Cornell and the Trustee each rely primarily upon a different case decided by the Court of Appeals for the Sixth Circuit. The Trustee cites *Employee Transfer Corporation v. Grigsley (In re White Motor Corporation)* ("*White Motor*") to support his position that Cornell is not entitled to a priority for an administrative expense. 831 F.2d 106 (6th Cir.1987). Cornell, on the other hand, asserts that the damages associated with Cardinal's alleged breach of the contract are administrative expenses under *United Trucking Service, Inc., v. Trailer Rental Company, Inc., (In re United Trucking Service, Inc.)* ("United Trucking"). 851 F.2d 159 (6th Cir.1988). Cornell contends that *White Motor* also supports its position. The resolution of this matter, therefore, requires a careful analysis of each of those cases.

### A. The White Motor Decision

The movant in *White Motor* sought administrative priority for expenses it incurred postpetition arising from a prepetition contract under which it provided relocation services to employees of the debtor. Those services included buying and reselling employees' homes after the employees had been relocated. The expenses incurred by the movant for "relocation properties" after the debtor filed its Chapter 11 petition were asserted as an administrative priority. Those properties had been acquired from the debtor's employees prepetition, however.

After the petition date, but without court approval, the parties signed a new agreement which purported to allow the debtor to continue to pay fees postpetition arising from the movant's prepetition home purchases. The court of appeals endorsed the bankruptcy judge's determination that this second agreement could not transform a prepetition debt into an administrative priority expense. *White Motor,* 831 F.2d at 111. Only if the Bankruptcy Code permitted such a conclusion could the postpetition expenses be characterized as administrative expenses.

The movant contended that the postpetition expenses arose from a transaction with the debtor-in-possession because it requested the movant to continue performance under the initial agreement. The debtor-in-possession's request created a new obligation with consideration flowing to the debtor-in-possession. The movant also argued that it conferred a benefit upon the estate by its continued performance.

The court of appeals began its analysis by restating the general policy of the Bankruptcy Code "to distribute all assets equitably." 831 F.2d at 110. Preference of one claimant over others requires a clear intent in the statute. 831 F.2d at 110. The *White Motor* court set forth the following test which a requesting party must meet to establish the existence of an administrative priority expense:

... the debt (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate.

831 F.2d at 110, citing *Cramer v. Mammoth Mart (In re Mammoth Mart, Inc.),* 536 F.2d 950, 954 (1st Cir.1976).

If the inducement for the consideration originated with the prepetition debtor rather than the postpetition debtor-in-possession, the consideration flows to the prepetition debtor. 831 F.2d at 110, citing *In the Matter of Jartran, Inc.,* 732 F.2d 584, 586 (7th Cir.1984). Thus, the key to the allow-

ance of an administrative expense under this analysis is an inducement to a third party by a debtor-in-possession, followed by consideration from the third party to the debtor-in-possession. If the commitments of the parties arose prepetition, there is no administrative expense payable from the bankruptcy estate. 831 F.2d at 110.

The court of appeals in *White Motor* agreed with the district court that the movant "became obligated to meet expenses when it purchased an employee's residence." 831 F.2d at 111. Further, the court found no consideration flowing from the movant to the postpetition debtor-in-possession. Rather, the inducement and resulting consideration occurred prepetition. Thus, the postpetition expenses incurred by the movant related to its prepetition obligations and constituted an unsecured claim. 831 F.2d at 111.

The *White Motor* court also rejected the movant's request for payment of an administrative expense predicted upon the theory of unjust enrichment. The court again referred to the underlying policy of the Bankruptcy Code and found that any other treatment of the movant's claim "would permit it to receive an inequitably large proportion of the estate's assets in contravention of the bankruptcy laws." 831 F.2d at 112.

### B. The United Trucking Decision

Less than a year after *White Motor*, the Court of Appeals for the Sixth Circuit decided another case involving a request for payment of an administrative expense under 11 U.S.C. § 503(b)(1)(A). *United Trucking Service, Inc. v. Trailer Rental Company, Inc. (In re United Trucking Service, Inc.)*, 851 F.2d 159 (6th Cir.1988). The debtor in *United Trucking* was the lessee of 55 truck trailers. After filing its Chapter 11 petition, the debtor neither assumed nor rejected the unexpired leases, but continued to use the trailers. The lessor filed two separate motions seeking to compel the debtor to assume or reject the leases and raised concerns about the maintenance of the vehicles. The debtor eventually returned the trailers to the lessor after approximately six months and two orders from the bankruptcy judge. At this time, the trailers were in "a state of disrepair." 851 F.2d at 161.

The lessor requested payment of an administrative expense under 11 U.S.C. § 503(b)(1)(A) for its costs to repair and replace the damaged trailers. The bankruptcy judge awarded the lessor an administrative expense and the district judge affirmed that decision. The court of appeals affirmed the legal decision to award an administrative expense, but remanded the matter to the bankruptcy judge for the appropriate calculation of damages.

The appellate court in *United Trucking* began by reaffirming the two-part test it had adopted in *White Motor:* that the debt arose from a transaction with the debtor-in-possession (or that the debtor-in-possession induced performance) and that it benefitted the estate. *White Motor*, 831 F.2d 106 at 110 and *United Trucking*, 851 F.2d at 161. The court, however, recognized that the "inducement" portion of the *White Motor* test was irrelevant under the facts before it. 851 F.2d at 162. The court reasoned that *White Motor, Mammoth Mart*, 536 F.2d at 950, and *Jartran*, 732 F.2d at 584 "all dealt with claims arguably arising from goods or services actively sought and provided by the claimant-creditor to the bankrupt estate." *United Trucking*, 851 F.2d at 162.

With regard to the facts before it, however, the *United Trucking* court stated:

> In contrast, this case involves a claim arising from [the debtor's] post-petition continued use of leased equipment that allegedly was not in accordance with the terms of the pre-petition lease agreement. We therefore do not believe the key inquiry is an inducement as in *Mammoth Mart, Jartran*, and *White Motor*.

*United Trucking*, 851 F.2d at 162.

The decision in *United Trucking* was clearly grounded in equity to prevent what the court viewed as an otherwise unjust enrichment to the estate. The court summarized its holding and reasoning as follows:

> In light of the Act's purpose of enabling the continued operation of insolvent businesses, we conclude that the

bankruptcy court was correct in treating TRC's post-petition damages claim as an administrative expense under § 503. United's asserted failure to maintain and repair the trailers in accord with the lease obligation allowed United, the debtor, to use the money saved and not paid for TRC's benefit as contemplated under the lease, to continue its operations. This breach and misuse of TRC's trailers did benefit the bankrupt estate. Accordingly, the damages under the breached lease covenant, to the extent that they occurred post-petition, provided benefits to the bankrupt estate and were property accorded priority under § 503 to TRC. *United Trucking*, 851 F.2d at 162.

The court's reliance upon the theory of unjust enrichment is clear from its measurement of damages. The administrative expense "should reflect actual value conferred on the bankrupt estate by reason of wrongful acts or breach of agreement." 851 F.2d at 162. The measure of the expense is the benefit to the estate *not* the damage to the claimant.

### V. *The Positions of the Parties*

The parties have agreed to submit to the Court the legal issue of whether Cornell, if it has a valid claim, is entitled to an administrative priority expense. Therefore, for purposes of this decision, the Court will not decide the proper amount, if any, of Cornell's claim. That dispute will be handled in the context of an objection to claim or a renewed request by Cornell.

Cornell relies primarily upon *United Trucking*, but also contends that it is entitled to an administrative expense under *White Motor*. Cornell contends that *United Trucking* should be applied to prevent the inequities which allegedly have resulted here. Cornell asserts that the facts of *United Trucking* are analogous to the facts in this case since Cornell's requested administrative expense results from Cardinal's failure to repair alleged defective construction as required under the prepetition contract between Cornell and Cardinal. Cornell asserts that Cardinal's failure to repair saved Cardinal money and thereby benefitted or "unjustly enriched" the estate. Under the analysis set forth in *United Trucking*, Cornell concludes that equity requires Cornell's expenses to be characterized as administrative priority expenses chargeable against the estate.

Cornell also asserts a right to payment of an administrative expense under *White Motor*. Cornell received a letter from Cardinal shortly after the petition date which read:

> With regard to Cardinal's filing of Chapter 11 on May 15, 1989, Cardinal is a Debtor in Possession. No Trustee has been or is anticipated to be appointed, and Cardinal continues to operate under its own management.
>
> We are continuing to manufacture and ship your project and assure you of our cooperation and dedication to insure a timely completion.

Cornell contends that this letter satisfies the "inducement" prong of *White Motor*. Without the alleged assurances of this letter, Cornell argues that it would have terminated the contract instead of allowing Cardinal to continue performance. By allowing Cardinal to continue under the contract and save money Cardinal should have expended on repairs, Cornell concludes that the second prong under *White Motor*, benefit to the estate, is also met.

The Trustee argues that the facts of *United Trucking* are inapposite to the facts in this case and that *United Trucking* is merely an exception to the general rule established in *White Motor*. The Trustee further contends that Cornell has not established its entitlement to an administrative expense under *White Motor*. Without the requisite inducement by the debtor-in-possession, the Trustee concludes that Cornell's claim, if valid, should not be given administrative priority, regardless of any benefit to Cardinal's estate.

### VI. *Conclusions of Law*

■ This Court believes that the decision reached by the court in *United Trucking* should be limited to fact patterns of a similarly egregious nature. The court in *United Trucking* was faced with an uncooperative debtor which, as lessee of various truck trailers, completely failed to maintain those vehicles postpetition in ac-

cordance with the lease provisions. Despite pressure from the lessor and several orders by the court, the debtor continued this behavior. Only after a court order to produce the vehicles did the debtor respond and return the ill-maintained truck trailers to the lessor. It was this pattern of behavior and total disregard for the leased property that led the court to award the lessor an administrative expense under 11 U.S.C. § 503(b)(1)(A).

*United Trucking* recognized that these facts differed from the facts of *White Motor* and its predecessors. The court, however, was compelled to support a finding of an allowable administrative expense. This Court believes that the conclusion in *United Trucking* was not grounded so much in a clear reading of the Bankruptcy Code as in achieving an equitable result given the outrageous facts before the court. This Court further believes that because of the evident equitable basis of decision in *United Trucking*, its application should be limited to equally egregious facts.

Those are not the facts before this Court. Although a traditional application of the law in *United Trucking* to the facts of this case appears at first blush to support Cornell's position, this Court concludes that the basis of decision in *United Trucking* is even more important. Cornell's assertion may be accurate that the estate benefitted from the money Cardinal saved by failing to repair any damage. Without the egregious facts of *United Trucking*, however, this is not enough. Cornell's allegations involve Cardinal's alleged breach of a construction contract, not a total disregard and destruction of Cornell's property.

Additionally, the injured lessor in *United Trucking* made efforts to mitigate its damages. The lessor filed two motions with the bankruptcy court seeking to compel the debtor-lessee to assume or reject the unexpired leases. Cornell, on the other hand, for whatever reasons, did not seek to compel Cardinal to assume or reject the unexpired construction contract. The lessor in *United Trucking*, unlike Cornell, was truly at the mercy of the debtor.

To summarize, the Court believes that the court in *United Trucking* felt compelled to award the lessor an administrative expense based upon a narrow equitable theory. That theory of unjust enrichment should be limited to the egregious facts that gave rise to the decision. The Court further observes that the use of leased property postpetition generally must be compensated by a bankruptcy estate as an expense. Therefore, it is not a significant departure from that principle to require the estate to compensate a lessor for postpetition damage, the prevention of which is the lessee's responsibility under the contract. Granting an administrative expense priority for alleged damages arising from inadequate performance of an executory contract never assumed by the estate, however, would be a very significant departure. On the facts before it, this Court is not prepared to take that leap.

Cornell's claim for an administrative expense under the *White Motor* decision also must fail. To qualify for an administrative expense, the debt must arise from a transaction with the debtor-in-possession postpetition and it must benefit the estate. *White Motor*, 831 F.2d at 110. The first prong of the test requires an inducement of performance by the debtor-in-possession rather than by the prepetition entity. *White Motor*, 831 F.2d at 110. As stated by one court: "To serve the policy of the priority, inducement of the creditor's performance *by the debtor-in-possession* is crucial to a claim for administrative priority." *Jartran*, 732 F.2d at 587 (emphasis in the original).

If Cornell assumed new obligations (not otherwise provided for in the prepetition contract) as the result of an inducement by Cardinal postpetition that benefitted Cardinal's estate, *White Motor* could provide a basis for allowing an administrative expense. The letter from Cardinal to Cornell postpetition, however, does not meet this "inducement prong." The contract establishing the rights and obligations of the parties was entered into prepetition. The postpetition letter, at most, sought to assure Cardinal's continued performance under the prepetition contract. It did not induce Cornell to perform new obligations. Rather, Cardinal's prepetition actions in-

duced Cornell to perform under the prepetition contract in a situation similar to that presented in *White Motor*.

Therefore, under *White Motor*, Cornell has not established that Cardinal as a debtor-in-possession induced Cornell postpetition to perform obligations Cornell did not already have under the prepetition contract. As a result, Cornell is not entitled to characterize any claim it may have for Cardinal's breach of the contract as an administrative expense.

### VII. *Conclusion*

Based upon the foregoing, the Court finds that Cornell has failed to show its entitlement to an administrative priority expense under 11 U.S.C. § 503(b)(1)(A) under the rationale of *United Trucking* or under the two-part test required by *White Motor*. Accordingly, any valid claim Cornell may have against the Cardinal estate arising out of the contract for student housing is not entitled to payment as an administrative priority expense under 11 U.S.C. § 503(b)(1)(A).

IT IS SO ORDERED.